## STATE OF FLORIDA v. HAMILTON
Case No. 13138/9-KM

## STATE OF FLORIDA v. RAMER
Case No. 08278-LD

## CITY OF DAYTONA BEACH SHORES v. LACEY
Case No. 42084/5-KU

## CITY OF DAYTONA BEACH SHORES v. McCLELLAND
Case No. 43197/8-KU

## CITY OF DAYTONA BEACH SHORES v. NELSON
Case No. 42203/4-KU

## CITY OF DAYTONA BEACH SHORES v. KOSER
Case No. 43531/2-KU

## CITY OF DAYTONA BEACH SHORES v. LUTZ
Case No. 42236/7-KU

## CITY OF DAYTONA BEACH SHORES v. SOBEN
Case No. 335-191/2/3/4-Q

### (Consolidated)
County Court, Volusia County
September 24, 1983

## APPEARANCES OF COUNSEL

**Shawn Briese** for State of Florida.

**Patrick Kennedy** for City of Daytona Beach Shores.

**Flem Whited** for defendant Hamilton.

**Michael Lambert** for defendant Soben.

## OPINION OF THE COURT

GAYLE GRAZIANO, County Judge.

This matter having come before the Court on various defense motions to suppress, which were consolidated, in the interest of judicial economy, solely for the determination of the issue raised in said motions, and the court having considered the evidence presented, arguments of counsel, the legal precedents throughout the State and Nation and being more fully advised in the premises, it is hereby

ORDERED and ADJUDGED that the Motions to Suppress the breathalyzer results are hereby denied for the reasons more fully set forth below.

("Breathalyzer" is used herein to refer to Breathalyzer, Intoximeter, and all other breath testing instruments approved by the State for determining blood alcohol content.)

### I

Pursuant to stipulation by counsel, the sole issue placed before the Court on the Motions to Suppress was whether the failure of the State to preserve certain physical evidence, whether it be in the form of an ampoule or an actual breath sample, for subsequent independent testing by the defendants violated the defendants' due process rights as guaranteed through the U.S. Constitution and the Constitution of the State of Florida.

Before the Court could determine the issue as to whether the defendants' substantive due process rights, framed by counsel as the defendants' right to confrontation, requires that he be allowed to conduct a separate test to possibly refute the results of the state

**114**

administered test, certain threshold issues needed to be established pursuant to the reasoning set forth in *State v. Lee,* 422 So.2d 76 (Fla. 2d DCA 1982) and *State v. Phillipe,* 402 So.2d 33 (Fla. 3rd DCA 1981). All parties stipulated that no breath samples had been retained in these particular cases. Thus, the burden fell upon the defense to demonstrate that it was scientifically feasible to collect and preserve breath samples, and should such a possibility exist, that such tests would produce reliable, material evidence.

To meet this burden, the defense called Dr. Lee Hearn to testify. Dr. Hearn was found to be an expert in the field of pharmacology and toxicology. He testified to various scientific theories upon which the present breathalyzer machines operate, problems with those machines, and the current state of the art regarding breath sample retention. Unfortunately, Dr. Hearn had no actual experience with either the current machines nor with sample retention. His contribution regarding this subject was limited solely to his review of the current literature and conversations in which he had engaged. The Court found his testimony regarding these matters at issue to be of limited value. There was no opportunity to cross-examine the literature nor to establish the validity or methodology of the studies in question. Further, the Court found these studies to be very limited both as to actual testing and long-term reliability. There was no information regarding defects or flaws with the examples of breath retention samples. Therefore, from Dr. Hearn the Court could not determine whether valid methods of breath retention existed, the feasibility of such, or the possible use of such at trial.

The State produced their own witness, Mr. S.O. Roberts, who is the Supervisor of the Implied Consent Division of the Department of Health and Rehabilitative Services. Mr. Roberts demonstrated an expertise in the area of the breathalyzer, its operation and problems associated therewith. Further, Mr. Roberts advised the Court regarding testing himself and the Department of various breath retention procedures currently available. Some of this testing had been over a period of some eight years. Mr. Roberts demonstrated to the Court a certain expertise in this area by actual experience and knowledge of the literature.

Based upon Mr. Roberts' testimony, the Court finds that it is possible to preserve breath samples.

Once this issue was resolved, the Court used the standard of general admissibility of scientific evidence to determine whether if preserved, the sample would result in reliable and material evidence. Mr. Roberts

**115**

advised this Court that the results of tests conducted upon certain breath samples had certain flaws but were as reliable as those tests now being conducted by machines currently in use by the State. Hence, the Court determined that the two threshold issues had been met to proceed to the issue of due process.

## II

The defense urges this Court to find that the destruction of the breath sample deprives the defendants of their Sixth Amendment right to confront witnesses against them. But that provision is by its terms limited to "witnesses" and does not encompass physical evidence as well. *U.S. v. Herndon,* 536 F.2d 1027 (1976).

The proper claim was raised by the defense in closing arguments as one under the Due Process Clause of the Fifth Amendment. As a matter of fundamental fairness which that provision guarantees the defendants, they are entitled to access to relevant and material evidence which is necessary for them to prepare their defense.

Has the State through its current procedures of destroying the breath sample, or failing to preserve it, denied the defense this access? This Court finds that the State has not.

Dr. Hearn testified that another sample taken in close proximity to the original could produce the same, reliable evidence as the original. Further, he stated that a blood test is even more reliable. F.S. 316.1932(f)3 provides:

"The person tested may, at his own expense, have a physician, registered nurse, duly licensed clinical laboratory technologist or clinical laboratory technician, or other person of his own choosing administer a test in addition to the test administered at the direction of the law enforcement for the purpose of determining the amount of alcohol in his blood or the presence of controlled analysis of his blood, urine, or breath. The failure or inability to obtain an additional test by a person shall not preclude the admissibility in evidence of the test taken at the direction of the law enforcement officer."

Pursuant to the foregoing statute a person upon whom a law enforcement officer has administered a chemical test can have any qualified person of his own choosing administer a test or tests for his own use. This provision affords the defendants a fair and reasonable opportunity to scrutinize and verify or impeach the results of the Breathalyzer tests administered by the law enforcement officer. This Court finds that the State is not required to make a sample of the

116

defendants' breath taken at the time of the Breathalyzer examination available to the defendants for independent testing, since such a reasonable opportunity presently exists.

Finally, as a side issue, the possibility of a *Brady (Brady v. Maryland,* 373 US 83 (1963)) violation was also raised. *Brady* held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or punishment, irrespective of the good or bad faith of the prosecution". In the instant cases, no evidence has been introduced establishing a reasonable probability that an analysis of the breath sample would have provided evidence favorable to them at trial or sentencing.